IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHONNISA J. SMITH, for )
Z.M.T., a minor, )
                                                          )
                                  Plaintiff, )
                                                          )
                                           v. )                           1:19CV578
                                                          )
ANDREW SAUL, )
Commissioner of Social Security, )
                                                          )
                                    Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Shonnisa Smith ("Plaintiff"), on behalf of her minor child Z.M.T., brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Child Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff filed her application for Supplemental Security Income on May 18, 2015, alleging a disability onset date of April 1, 2011. (Tr. at 11, 223-43.)[1] Her application was denied initially (Tr. at 66-76, 94-102), and that decision was upheld upon reconsideration (Tr. at 77-91, 106-14). Thereafter, Plaintiff requested an administrative hearing de novo before

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

an Administrative Law Judge ("ALJ"). (Tr. at 115-17.) On January 29, 2018, both Z.M.T. and his grandmother appeared and testified at the subsequent hearing, where Z.M.T. was represented by an attorney. (Tr. at 11.) The ALJ ultimately issued a decision finding Z.M.T. not disabled within the meaning of the Act (Tr. at 11-25), and on April 5, 2019, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). A child under the age of 18 qualifies as disabled if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 416.906. More specifically, the ALJ must follow a three-step sequential evaluation process to consider whether the child in question (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a).

At the third step, in determining whether a child's impairment is functionally equivalent to a listed impairment, the ALJ considers how the child functions in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with

3

others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a), (d). A child has a "marked" limitation in a domain when the impairment "interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation in a domain if her impairment interferes "very seriously" with her ability to independently initiate, sustain, or complete activities, and is the equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3). For each of the six domains, the regulations provide descriptions of relevant skills and their applications for various age groups, e.g., preschool children, school-age children, and adolescents, as well as examples of limited functioning within each domain. See 20 C.F.R. § 416.926a(g)-(l).

III. DISCUSSION

In the present case, the ALJ found that Z.M.T., a minor child, had never worked, and that he therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Z.M.T. suffered from the following severe impairments:

> attention deficit hyperactivity disorder (ADHD) and a dexterity deficit[.]

4

(Tr. at 14.) The ALJ found at step three that neither of these impairments met or medically equaled a disability listing. (Tr. at 14.) She then conducted a detailed analysis as to whether Z.M.T.'s impairments, singly or in combination, functionally equaled the severity of the listings. Specifically, based on the requirements of 20 C.F.R. § 416.926a, the ALJ assessed Z.M.T.'s functioning in the six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for himself, and (6) health and physical well-being. (Tr. at 15-25.) The ALJ determined that, although Z.M.T. had a marked limitation in acquiring and using information, he had no limitations or less than marked limitations in the other five domains. Therefore, the ALJ concluded that Z.M.T. did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or "extreme" limitations in one domain of functioning as required to demonstrate disability under the Social Security Act.

Plaintiff now contends that substantial evidence fails to support the ALJ's finding that Z.M.T. has a "less than marked" limitation in attending and completing tasks. In particular, Plaintiff points to opinion evidence, testimony, and medical evidence indicating Z.M.T.'s ongoing struggles with attention and task completion throughout the time period at issue. However, as Defendant correctly recounts, the issue is not whether the ALJ could have reached a different conclusion given the evidence in this case, but whether substantial evidence supported her determination. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig, 76 F.3d at 589) (The issue before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence.").

5

Under the Social Security regulations, the fact that Z.M.T has been diagnosed with ADHD, and the fact that he may qualify for services and educational intervention, do not establish that he is disabled for purposes of Social Security. See 20 C.F.R. § 416.925(d) (noting that a claimant's "impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria of the listing."). Instead, the ALJ must evaluate the impairments under the regulatory provisions, and the ALJ's decision must be upheld if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); see also Craig, 76 F.3d at 589 (holding that courts should defer to the Commissioner's findings if they are supported by substantial evidence).

As set out in the ALJ's decision in this case, the domain of attending and completing tasks "considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time." (Tr. at 21-22) (citing 20 C.F.R. § 416.926a(h) and S.S.R. 09-4p). The decision also cites specific examples of situations in which a school-age child without an impairment should be able to focus his attention, such as following directions, remembering and organizing school materials, completing classroom and homework assignments, avoiding careless mistakes, changing activities without distraction, participating in group sports, and completing chores. The ALJ next included examples of limited functioning in this domain, such as being easily distracted or startled, failing to complete activities of interest such as games

or art projects, being easily side-tracked from activities, frequently interrupting others, requiring extra supervision to remain engaged in an activity, or lacking the ability to plan, manage time, or organize oneself to complete assignments or chores. (Tr. at 22) (citing 20 C.F.R. § 416.926a(h) and S.S.R. 09-4p).

The ALJ further noted that the examples of "limited functioning . . . . do not necessarily describe 'marked' or 'extreme' limitation." (Tr. at 22.) Rather, the regulations explain that "a child has a 'marked limitation' when his impairment(s) 'interferes seriously' with the ability to independently initiate, sustain, or complete activities. A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities." (Tr. at 13) (citing 20 C.F.R. §416.926a(e)(2)). A "marked limitation" may also be defined as "[a] limitation that is 'more than moderate' but 'less than extreme.'" (Id.)

In the present case, the ALJ noted the evidence of Z.M.T.'s struggles with attention and task completion throughout the relevant time period. In particular, the ALJ recounted the testimony of Z.M.T.'s grandmother that Z.M.T. "took medication all year long and that he was a little more focused, but continued to have problems with comprehension." (Tr. at 16.) At a consultative examination in February 2014 conducted by Donna Mansour, M.A., and Christopher Clougherty, Ph.D., Z.M.T.'s grandmother indicated that he "was very hyperactive and diagnosed with ADHD." (Tr. at 16, 358-64.) "She also indicated that he had difficulty doing and completing schoolwork, failed to complete assignments, needed close supervision to get through assignments, avoided tasks, had trouble concentrating in class, and did not always follow through on instructions." (Tr. at 17, 362.) Ms. Mansour and Dr.

7

Clougherty agreed that Z.M.T. needed "some assistance in performing his daily living skills," and that "he had some issues with judgment and insight" due to inattention. (Tr. at 17, 363.) However, they further noted that Z.M.T. was able to understand, retain, and follow instructions. (Tr. at 17, 363.) The ALJ gave "great weight" to the consultants' opinion regarding instructions "because [Z.M.T.] was able to adequately participate in testing as well as school resource services including occupational and speech therapy." (Tr. at 17.) In contrast, the ALJ assigned "some weight . . . to the portion of the opinion that [Z.M.T.'s] grandmother had to help him with his homework because it did not appear that he required any assistance during the course of the evaluation." (Tr. at 17.) Similarly, the ALJ gave some weight to "[t]he portion of the opinion that indicated that [Z.M.T.'s] inattention caused issues with judgment and insight . . . because it was noted that he continued to have toileting accidents." (Tr. at 17.)

Z.M.T. underwent a second consultative examination in March 2014 with Maqsood Ahmed, M.D. At that time, Z.M.T.'s grandmother reported that "medications helped with his concentration and hyperactivity" and "that he was able to focus better and . . . was making progress in his speech and occupational therapy." (Tr. at 17, 366.) Accordingly, Dr. Ahmed noted concentration difficulties as well as "a history of hyperactivity that was stable with current medications." (Tr. at 18, 368.) The ALJ gave great weight to the examiner's finding regarding Z.M.T.'s hyperactivity "because . . . the doctor was able to personally observe [Z.M.T.] and the conclusions were consistent with the record." (Tr. at 17.) However, she assigned "some weight" to the opinion that Z.M.T. had difficulty with concentration in light

8

of the grandmother's reports that Z.M.T. was able to focus better with medication and was "making progress in his speech and occupational therapy." (Tr. at 18.)

In September 2015, Z.M.T.'s first grade teacher, Jeanne Hodges, completed a Teacher Questionnaire. (Tr. at 18, 289, 294.) In the domain of attending and completing tasks, Ms. Hodges was asked to indicate in each of thirteen areas whether Z.M.T. had (1) no problem, (2) a slight problem, (3) an obvious problem, (4) a serious problem, or (5) a very serious problem. (Tr. at 289.) Ms. Hodges reported as follows:

| | | | | | |
|---|---|---|---|---|---|
| Paying attention when spoken to directly | 1 | [2] | 3 | 4 | 5 |
| Sustaining attention during play/sports activities | [1] | 2 | 3 | 4 | 5 |
| Focusing long enough to finish assigned activity or task | 1 | 2 | [3] | 4 | 5 |
| Refocusing to task when necessary | 1 | 2 | [3] | 4 | 5 |
| Carrying out single step instructions | 1 | 2 | [3] | 4 | 5 |
| Carrying out multi step instructions | 1 | 2 | [3] | 4 | 5 |
| Waiting to take turns | [1] | 2 | 3 | 4 | 5 |
| Changing from one activity to another without being disruptive | [1] | 2 | 3 | 4 | 5 |
| Organizing own things or school materials | 1 | 2 | [3] | 4 | 5 |
| Completing class/homework assignments | 1 | 2 | [3] | 4 | 5 |
| Completing work accurately without careless mistakes | 1 | 2 | 3 | [4] | 5 |
| Working without distracting self or others | 1 | 2 | [3] | 4 | 5 |
| Working at a reasonable pace/finishing on time | 1 | 2 | [3] | 4 | 5 |

(Tr. at 18-19, 289.) Thus, Ms. Hodge noted problems with Z.M.T.'s abilities in attending and completing tasks, but identified no areas as a "very serious problem" and only one area as a "serious problem": completing work accurately and without careless mistakes. Ms. Hodge noted that Z.M.T. had "many incomplete assignments [and] tests" and also noted that he was:

> Very hyper! Had a hard time walking in the hallway (in a straight line). However, once I made it into a game [with Z.M.T.] – he can't leave the 3rd row of tiles from the wall or he will "fall into lava" – he hasn't had any more problems.

9

(Tr. at 289, 294.) The ALJ gave Ms. Hodges' opinion great weight, noting that [Z.M.T.] had many incomplete assignments and tests. (Tr. at 19.)

The State agency consultants at the initial level, Angela Brown, M.Ed. CCC-SLP, and Daniel Nelson, Psy.D., opined in November 2015 that Z.M.T. was less than markedly limited in attending and completing tasks. (Tr. at 20, 72-73.) In reaching this conclusion, Ms. Brown and Dr. Nelson relied primarily on the Teacher Questionnaire from Ms. Hodge discussed above. (Tr. at 72-73.) In contrast, the second set of State agency consultants, who reviewed the claim at the reconsideration level, found Z.M.T. markedly limited in this domain. (Tr. at 20, 86-87.) Ultimately, the ALJ cited Z.M.T.'s ability "to actively participate in speech therapy and follow instructions given by other examiners" to discount the findings of the second State agency consultants on reconsideration, and the ALJ instead gave great weight to the opinion of the initial consultants, Ms. Brown and Dr. Nelson. In doing so, the ALJ noted that the opinion of Ms. Brown and Dr. Nelson was "consistent with the overall medical evidence of record." (Tr. at 20.) With respect to the medical evidence of record, the ALJ noted Z.M.T.'s records from Durham Pediatrics:

> Recent records from Durham Pediatrics showed that the claimant's ADHD was doing well. It was noted that he had sufficient focus in school, spent appropriate time doing his homework, and had okay ease with organizational tasks.

(Tr. at 19, 481.) That most recent record from Durham Pediatrics noted that Z.M.T.'s ADHD was "under good control." (Tr. at 482.)[2]

---

[2] Earlier records reflect that Plaintiff was initially prescribed Adderall for his ADHD, and the ADHD was under "fair control." (Tr. at 373-74.) He stopped taking the Adderall during the summer of 2014, but it was restarted in July 2014. (Tr. at 373, 375.) The dosage was increased in October 2015, and a treatment record for February 2016 reflects that the Adderall prescription would "continue as is going well." (Tr. at 410-11, 501.) Late in

10

After providing the above evaluation of the evidence, the ALJ concluded that Z.M.T. had a less than marked limitation in attending and completing tasks. (Tr. at 22.) In addition to the above discussion, the ALJ noted that:

> The claimant's grandmother testified that he did not finish his work and his most recent report card showed an R for rarely completing classwork on time. At times, he completed his homework on time.

(Tr. at 22) (citing Tr. at 350-54). With respect to the references to Plaintiff's report card, the record reflects that Plaintiff's Non-Academic Behaviors were assessed on his quarterly report cards with respect to:

> Takes responsibility for learning
> Respects authority, peers and property
> Follows directions
> Completes classwork on time
> Completes homework on time
> Demonstrates effort
> Participates in class activities
> Collaborates effectively with peers

(Tr. at 347, 345, 352.) These areas are graded using a scale of: C -Consistently Demonstrates; S -Sometimes Demonstrates; R -Rarely Demonstrates. His report card for second grade reflects that Z.M.T. "Consistently Demonstrates" all of those listed behaviors for each quarter. (Tr. at 347.) His third grade report card reflects a mix of "Sometimes Demonstrates" and "Consistently Demonstrates." (Tr. at 345.) Specifically with respect to "completing classwork on time" and "completing homework on time," these categories were assessed as "Sometimes Demonstrates." (Tr. at 345.) The first quarter on his fourth grade report card similarly reflects

---

November 2016 and into spring of 2017, the Adderall was no longer as effective, and in April 2017 he was switched to Vyvanse. (Tr. at 494-95, 484-85.) The Vyvanse was effective, as reflected in the August 2017 record discussed above. (Tr. at 481-83.)

11

a mix of "Sometimes Demonstrates" and "Consistently Demonstrates," but for the first time there is a single "Rarely Demonstrates." Specifically, the report card for the first quarter of fourth grade reflects a "Rarely Demonstrates" for completing classwork on time, but still reflects a "Sometimes Demonstrates" for completing homework on time. (Tr. at 352.)

Considering the ALJ's explanation in conjunction with the reasoning provided throughout the administrative decision as a whole, the ALJ's rationale for finding that Z.M.T. had a less than marked limitation in attending and completing tasks consists of (1) Z.M.T.'s improvement and/or stability on ADHD medications, as reported by his grandmother and reflected in the consultative examinations; (2) his improvement and progress in speech and occupational therapy; (3) his adequate participation during therapy sessions and examinations; (4) the evaluation by Ms. Hodge discussed above; (5) the opinion of state agency consultants Ms. Brown and Dr. Nelson of "less than marked" limitation in this area; (6) the most recent Durham Pediatrics records reflecting sufficient focus and ADHD under good control; and (7) his ability to complete his homework "at times," in reference to the report card assessments noted above. Defendant argues that this "constitutes more than a mere scintilla of evidence that Z.M.T. had a less than marked limitation in the functional domain of attending and completing tasks," and that this is all that the substantial evidence standard requires. (Def.'s Br. at 12 (citing Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019))).

In response, Plaintiff discusses the evidence and essentially asks the Court to re-weigh the evidence and find that Z.M.T. has a marked limitation in Attending and Completing Tasks. For example, Plaintiff contends that Ms. Hodges' evaluation would warrant a finding of marked limitations, even though state agency experts reached different conclusions regarding

12

Case 1:19-cv-00578-LCB-JEP    Document 16    Filed 02/24/21    Page 12 of 14

what that evaluation showed. Plaintiff also contends that while the speech and occupational therapy notes reflect progress, they also still reflect difficulty sustaining attention and completing multi-step tasks, including the need for movement breaks to maintain attention, which Plaintiff contends would warrant a finding of marked limitation. (Pl. Br. at 11-13.) Plaintiff also contends that the ALJ should have given weight to the second state agency evaluation, rather than the first evaluation by Ms. Brown and Dr. Nelson. (Id.) Plaintiff similarly challenges the ALJ's decision to give weight to the most recent Durham Pediatrics evaluation, contending that the cited appointment was prior to the beginning of the school year and therefore reflected only Z.M.T.'s attention and focus during a summer reading program. (Id at 14.)

Ultimately, however, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Z.M.T.] is disabled," but rather, "whether the ALJ's finding that [Z.M.T.] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, explained the reasons for her determination, and that determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion to Reverse should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 24th day of February, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge